Case No. 20-5781, USA v. Mark Nix, Argument Not to Exceed 15 Minutes per Side. Mr. Robinson, you may proceed for the appellant. Good morning. Good morning, Your Honors, and may it please the Court, my name is Matthew Robinson on behalf of the appellant Mark Nix. Mark Nix is a federal inmate convicted of conspiracy to distribute oxycodone. He's got a sentence of 198 months. We're appealing from an order from the District Court denying his motion to reduce or for compassionate release under 18 United States Code Section 3553A1, little a, or excuse me, little 1. The issue is fairly narrow in my belief at this point. It looks like the Court denied relief based exclusively on the fact it believed it lacked the authority to determine that the circumstances Nix presented to the Court were extraordinary and compelling reasons that justified or called for a reduced sentence under the statute. The Court's reasoning is based upon, it's clearly, and in the Court's order, there's a, the Court recognizes the circuit split, or excuse me, the current split among the District Courts. There's very little circuit authority on this issue. But many District Courts are finding that the sentencing guidelines commentary kind of defines what a judge can do in terms of interpreting what extraordinary and compelling reasons are. In particular, Section 1B1.13 comment notes 1A through D. Mr. Nix does not fit into any of those circumstances under A1 through C, or 1A through C, excuse me. He instead qualifies as other reasons. Now, the trick here is that the, this is a result of the First Step Act, which was passed at the, went into effect at the end of 2019, which changed the statute and allowed inmates to file these motions for relief. The sentencing guidelines commentary has not been updated since then. And so many courts are finding the commentary to be controlling still, even though it's inconsistent with the statute. And that's the reason the judge denied Mr. Nix's motion. Mr. Robinson, it's Judge Cole. I just had one question. Yes, Your Honor. My recollection from the District Court order, which, you know, is pretty thorough, is that the District Court really gave alternative rulings. Is that right? District Court essentially looked at the issue in terms of whether 1B1.13 is binding, but toward the end of the opinion said, but I recognize there's been a change in the law. And even if it's, we're not bound, I still would deny relief based upon the lack of extraordinary and compelling circumstances. Well, I think. Is that a fair reading of the District Court opinion? That's not the reading that I have. Okay. The reading I see is that it begins and finishes with the commentary of the guideline analysis. It recognizes the circuit. It sides with, excuse me, the District Court split indeed, but it sides with the other district courts who've said that the commentary is binding and controlling. In this instance, the court does, for lack of a better term, pay lip service to Nix's claims. You know, but essentially the basis for the court finding, even though the court said alternatively, or may, I don't even know if the court actually used that frame, but the court. Mr. Robbins, let me just ask you, still in relation to that point, what is the language that you lock into that causes you to assert that the judge did not realize that he had the authority to do otherwise? Well, it's the entire reading of the order. If you read the order outright, it's like I said, the majority of the analysis focuses on the guidelines and the controlling factor of the commentary. When the court gets to the analysis of Nix's conditions, for example, with respect to COVID, the court talks about the fact that his conditions are being controlled and he's not essentially on his deathbed at this moment. He's only 55 years old. He's so far away from these points that are in the commentary that the court still relied upon that commentary in issuing this decision and relied exclusively on it. But why can't that be interpreted as, and what I'm drawing from this is the judge saying, you know, whatever the situation is, your situation, to my mind, is not so exceptional or extraordinary that you deserve to release because you're young, your conditions are treatable. You've still got a lot of sentence left. And that doesn't sound like judge not being aware that the judge could do it if he were inclined. That sounds like the judge is not inclined. Well, the judge may or may not be inclined. I'm not sure based on the order. I mean, you know, clearly, if the court considered these factors unconstrained by the guidelines and unbridled by those and with the authority to consider these conditions and arguments that were presented, you know, the court may very well come down on the other side. For instance, the court does not even address at all the fact that Mr. Nix argued one of his extraordinary reasons and circumstances is the fact that if he was sentenced today, he would not be considered a career offender. You know, he's convicted, he's pled guilty to a conspiracy to distribute controlled substances after harvest. That conviction no longer qualifies as a predicate offense for that enhancement. The court just kind of tossed that aside without even addressing it. You know, and as far as the conditions at FDC Philadelphia, you know, we filed this motion months ago when there wasn't an outbreak. Now there is. There's, you know, 71 inmates as of today that are infected, 22 staff members. This Mr. Nix is 55 years old, yes, but he suffers from hypertension and COPD and asthma. You can probably renew the motion, I suppose, if the circumstances have changed. And so the district court did mention things like your client's role in the conspiracy and the amount of drugs involved. He did mention his status as a career offender, I believe. And I think he mentioned that he was a career offender. He definitely doesn't have a good conduct award, Your Honor. He has prior convictions. This is not a saying that he didn't qualify at the time. But under current law, and I'm not asking any court to apply anything retroactively either. It's just an extraordinary circumstance that his sentence would be lesser today. I want to talk about that point too. I was just sort of making the point that district court judge did reference a lot of the critical points that you would expect him to reference when he's looking at the 3553A factors. And I think that might be the best one you're latching on is the fact that if he would maybe no longer have qualified as a career offender, and that may have affected his sentencing. That's correct. Would the current sentence be outside the sentencing range, even if you took away the career offender consideration? There, I believe it would be very close. He ended up at 198 months, he would be less than 198 months of that I haven't run a full calculus or if I do during rebuttal I can explain it. If I may do so. The exact difference in what the sentencing guidelines would be. Yeah, my impression was that he would still fall within the range. In other words, this sentence he's currently serving would still be within the guideline range, even under the factors you think the court should consider. Potentially, that's the case. But again, the court never got to any of these factors. And that's the point of this argument. I think if we're going to have, you know, at some point there needs to be an even understanding across the board as to what a judge can do. And, you know, I know the court is aware of all the different decisions. I know we've cited a multitude of them in both of our briefs. And they do come down on both sides. But here, it's more than just a question of whether or not the court gave consideration to Mixter Nix's conditions. The judge did go through all these conditions that that he talked about the COVID outbreak and the post defense rehabilitation and and and the other things that that he cited in his brief. However, the court relied and relied to not just I can't say exclusively, but to such a significant degree on the sentencing guideline commentary that it completely colored the ruling. There is no There's not even a thought or the consideration that these factors could be Relevant even under this circumstance under 3582 Okay, Mr. Robinson. I had one question about the career offender classification. I thought I saw somewhere in the record that at least at the initial sentencing. The court use the adjusted offense level, which was higher than the career offender level. Do we know whether if there were to be Review of this sentence again, whether the career offender level or determination would even be at play. Am I correct about that. The career. The career offender determination could not be applied under habits at this point because the conspiracy fence is just simply not a controlled substance offense and But, but the adjusted offense level would still be the same as it was initially wouldn't The adjusted defense level, if I recall, would be The same or similar. Yes. Okay. And that's what the court used initially Okay. I'm just asking Well, I'm looking at. I'm looking at the judgment. I'm looking at the sentencing transcripts on, you know, the court found him to be a career offender. So that that is what Okay, we're Finding was it sentencing. I have just one last question. If your argument is that Courts confronted with these motions would make determinations under this one D. Section. The other reasons section. I'm a little concerned whether there is a limiting principle there. I mean, the government's brief says that if courts can simply Determine these motions based upon extraordinary and compelling circumstances and these prison reduction motions that this just opens up sentencing to the way things were in essence before we even had guidelines that District courts could use any number of wide range of sentences and we would end up once again with inconsistent sentencing. Is that something that we should be concerned about? I think it's something to be concerned about. But I think in this circumstance, it could be fixed remedied very easily the sentencing guidelines simply need to be amended to conform with the statute. The stat, you know that that's that's the issue, you know, other than a judicial determination. Now, yes, as the statutes currently written and I would say it's not even under the commentary one D. That I'm asking that the court has the authority to do this. I would say it's under the statute itself section 3582 C1 a capital a little I And and that particular part of the statute is what gives the court, the authority to do this. And because that part of the statute and the fact that inmates can now bring these motions that that now. Since the guidelines have not been updated, then I see my time is up. But the point is, is that the authority comes under the statute, not the guidelines and until the guidelines are amended. You know, that's when things need will change. I gotcha. Well, thank you. You'll have your two minutes of rebuttal. Thank you. Yes, Miss Brenneman. May it please the court Deborah Brenneman for the United States of America. I'd like to start with the text of the statute. Before I do that, let me talk briefly about how the career offender guideline affected or didn't affect defendant sentence. The pre sentence report makes clear page ID 333 that is offense level stemmed from drug quantity, not the career offender classification. The career offender classification did affect the guideline range, however, because it enhanced criminal history category from five to six. So were he sentenced today, and we agree he would not be a career offender, the applicable guideline range would be 168 to 210 months. The sentence that both parties agreed was appropriate at sentencing. That's page ID 503 and 510 was a sentence of 198 months, which still fits within that range, and we maintain that that sentence remains appropriate. I've got essentially three points to make today. First, the text of 3582 C1A supports the district court's conclusion. Second, 1B113 is binding under the Supreme Court's decisions in Stinson and Dillon, with one minor exception which I'll address. And third, the only circuit court to have issued a published opinion on this issue so far, the Second Circuit in Brooker, reached the wrong conclusion. And I'd like to warn this court from making that same mistake. Okay, and I don't want to get you off, but I just want to keep this kind of logically. You've told us about the agreed upon sentence and the range. And I know that there's one argument that, well, had he been sentenced today, you know, under the First Step Act, there would have been a different sentence. Did you calculate what the different sentence would have been if there would have been a different sentence had he been sentenced today on the first step? I don't know that I can calculate what the sentence would have been. It's the government's position that a 198-month sentence remains appropriate. Oh, I understand. And that is within the guideline range that would now apply to him. Okay, and is it your position also that it was appropriate for the judge not to consider any First Step Act potential application? To the extent that involves post-sentence legal developments, yes. Because those are conspicuously absent from Application Note 1 to 1B113. Okay, thank you, and I'm sorry to get you off your presentation. No, that's fine. The other thing that's absent from the note is a reference to this applying where the inmate has brought the motion as opposed to the Bureau. Certainly. The strong threshold argument that we shouldn't be looking at this guideline in the commentary? The exception here is that because the policy statement was last amended in November 2018, one month before the First Step Act, it contains two references to courts acting upon a motion by the director of the Bureau of Prisons. Those are the only two things that have been affected by the First Step Act. The first reference is in the opening line of the guideline text. It says, upon motion of the director of the Bureau of Prisons. And the other is the first sentence of Application Note 4, which says, a reduction under this policy statement may be granted only upon motion by the director of the Bureau of Prisons. Those two phrases, the first sentence of Application Note 4 and part of the first line of the 1B113, are inconsistent with 3582C1A as amended by the First Step Act. So we agree that those sections are obsolete and have no effect. This Court should strike them, ignore them, as it did in Havis, when it found that language was incompatible with the language of a guideline. It should simply strike that language. But there is no authority for this Court to substitute different language. And that seems to be what Mr. Nix is asking the Court to do. So back to the language of the statute, 3582 says, a court can reduce a sentence if it finds extraordinary and compelling reasons and that the reduction is consistent with applicable policy statements issued by the Sentencing Commission. So can I stop you there? So I assume that for the relief that Mr. Nix is asking for, he's saying it falls under little i under the statute. So 1A, i, the extraordinary and compelling reasons. Do you disagree with that? I agree that if he showed extraordinary and compelling reasons  I think that's the second step that he would say we don't have to do now. And he's saying his request, given the change in law, coupled with some health concerns that he would otherwise qualify under little i and we should ignore the guideline provision because by its title doesn't apply to his circumstance. Well, by its title, it still does apply. The title of 1B113 says it's for reduction in term of imprisonment under 3582CLA. Counsel, I'm sorry. You know what I meant. I meant the very first line which says upon motion. So the very first phrase, the very opening phrase would not apply. Look at any of that. We should just rely on little i which allows for extraordinary and compelling circumstances and we have those here. It requires this court to ignore that statutory language about an applicable policy statement. And the Second Circuit, of course, in Brooker said it's not applicable. But he's saying it's not applicable because of the very first line and then the specific sentence in Section D that again starts off with the Director of Bureau of Prison. So maybe I didn't quite follow your argument that we should strike certain provisions, but how again is it that this guideline? Let me try a different way. It is still applicable because the change that the First Step Act made did not change any of the substantive criteria. It only changed who may file a motion. Applicable is defined as capable of being applied fit and right to be applied and the Commission's policy judgments about which reasons are in fact extraordinary and compelling applies equally to motions filed by defendants as to motions filed by the court. Congress expressly delegated to the Sentencing Commission that job of defining extraordinary and compelling circumstances. That's not just from 3582. That also comes from 994T. Congress said rehabilitation is not an extraordinary compelling reason and we require the Commission to define what that is and provide specific examples. Sure, the Sentencing Commission could someday amend the guidelines to include other categories if it wanted to do so, but we see no basis for the court to find that it is simply inapplicable merely because it contains language which could easily be stricken without adjusting or avoiding clear congressional intent and the Sentencing Commission's policy statements. Treating 1B.113 as binding for all 3582 motions, no matter who filed them, is consistent with the backdrop of the existing law when Congress enacted the First Step Act. And had Congress intended to strike consistent with applicable policy statements of the Sentencing Commission, it could and should have done so in the First Step Act. We know what Congress intended to do by what Congress said because it, under the existing framework of Stinson, with commentary being binding, except where it's inconsistent with the statute. That's why I say we strike the first sentence of application for note 4 in the first line. And in Dillon, which says that these policy statements are binding in the sentence reduction context. Isn't one answer that this guideline is still applicable where the Bureau of Prisons brings the motion, but it's no longer applicable and so we shouldn't get it when the inmate brings the motion? And if the Commission wants to amend the guideline to make it applicable in both circumstances, it could, but that hasn't happened. Granted, it can't really act right now, so there's that issue. But I think you could read the text that way and say Congress left the text the way it is for a reason because under this one category of motions, we want the full breadth of the guideline to apply, but another category, we're leaving a lot more room for discretion for the district court, I suppose. That is one possible reading of 1B.113. I submit that it is not the most faithful to the statutory text because at the time Congress enacted this, it knew that there was no separate requirements for defendant-filed motions. And I see no rational basis to distinguish between the person who files the motion when that's the only change that Congress made in the First Step Act. I agree that Congress intended to expand and expedite and improve compassionate release, but it did so by allowing defendants to petition the court, not by changing the standards. And... So maybe to go back to the question that Chief Judge Cole asked, your friend on the other side, but assuming, even if we thought the district court was wrong about its analysis, does that change the outcome here? Can we still affirm? You can still affirm. The district court said that even if it could recognize other reasons than those in the application note, it did not find any of defendants' reasons extraordinary and compelling. That's page ID number 796. So I think your friend on the other side, his main point of criticism is that the district judge didn't consider the full range of his arguments, was sort of blinded by the statutory argument, didn't agree with the defendant, and then sort of short-changed the 3553 analysis, and maybe in particular didn't give enough attention to the lack of career offender designation. So can you talk about that issue specifically? I think the reason the district court didn't discuss the post-sentence legal developments in any detail is because they are not listed as one of the things in the policy statement. So it is possible that the policy statement influenced the court's decision on that. In reading the opinion, is it possible to... that the district court did not understand that it had the right power, ability, discretion to grant relief if he found those factors favoring that? I'll stop there. I think the district court correctly assessed its authority because in our view, its authority is limited by 1B113. Obviously, if the court rejects that assumption, then the appropriate result would be to remand for the district court to consider it under the appropriate standard. But I see a lot of the statutory text, the history, the backdrop existing law when Congress enacted the First Step Act, the text of the First Step Act itself. I think all of these factors strongly suggest that the congressional choice was still to give the sentencing commission exclusive authority to determine what reasons were extraordinary and compelling, and that there's no basis to give the district court the chance to assess that for itself. You know, looking at 1D, for example, which, again, recognizes other reasons, but only as determined by the director of the Bureau of Prisons, that arguably incorporates by reference BOP's program statement, which is more expansive and therefore more favorable to defendants than 1B113. Okay. So, just curious. Sure. If the government granted any request for reduction in sentence under the First Step Act with respect to COVID-19 concerns, so what are those circumstances? Because we are in a whole new uncharted situation for most of us. And I just wonder, if the Bureau has granted relief, what are those circumstances for granting that relief? Sure. The Bureau of Prisons and the Department of Justice have taken the position since, I believe, May 2020 that a defendant whose medical conditions place them at risk of severe illness from the coronavirus, namely defendants who have a risk factor recognized by the CDC, can qualify under Application Note 1A2 as having a serious medical condition that might hinder their ability to provide self-care. That's because the CDC defines severe illness as one that would require hospitalization or could result in death. Either hospitalization or death obviously prevents self-care within a prison environment. So we have consistently been agreeing that extraordinary and compelling reasons stop for a moment. Because on the first part of that, when you talk about CDC guidelines, it seems like those guidelines were general guidelines that were not as severe as death or hospitalization. And CDC talks about things like hypertension and the elderly. They go on a range of things. So where do you make this demarcation? The CDC has amended its guidance over time. And so our position has also reflected the CDC's guidance over the past few months. Because again, we're dealing with a global pandemic. It's killed over 246,000 people in the United States alone. The CDC defines these things as certain conditions necessarily increase the risk. For any defendant with those conditions, we agree that they have established extraordinary and compelling reasons within the language of the existing application note 1A2. If the CDC, things like hypertension and asthma, which Mr. Nick said he had, the CDC says those are only things that might possibly increase the risk. And so we have not agreed that those amount to extraordinary and compelling reasons. Because that's simply a possibility at this time. That's the position that we've taken. That's part of the reason. On the CDC guidelines, do those guidelines distinguish between people at liberty in the community and people in confined environments? Because those confined environments themselves create special situations. Do their guidelines address that issue? The guidance regarding medical conditions that increase the risk of severe illness do not distinguish between the type of custodial environment, no. Okay. Madam, I know your time has expired, but I do have just one question. Mr. Robinson has mentioned, I know this is not part of the record, I'm assuming it's not, that since the time that the district court decided this matter, that there has been a flare-up or outbreak of COVID-19 in this particular institution. And as you said, we're living in a global pandemic with the situation changing daily, weekly, certainly monthly. Does it make any sense to send this back to the district court to make a determination on this motion in light of the current situation in the prison? Or will we just have Mr. Nix go back and start the whole process over again? Mr. Nix can file a renewed motion if he has changed circumstances. But I would ask this court to decide the question presented here, to hold that 1B.1.13 is in fact binding, as the district court found, and to affirm its decision on that basis. Okay. Thank you. Mr. Robinson, you have two minutes. You're muted, sir. I'm sorry about that. I apologize. No problem. Two points. One is Mr. Nix's medical conditions are serious. He does have COPD, not just asthma. The district court's order ferrets that out. And as a matter of fact, Mr. Nix, he tells me what his conditions are and he didn't know what the real words were. So, yeah, thank God that they at least presented the accurate medical records. But the point is that these conditions within the prisons are clearly more dangerous than on the outside. I don't think there's anyone that can debate that. If we're looking for certainty from the guidelines from the CDC, everything's a possibility at this point. You know, so if the government's position and the Bureau of Prisons' position is that if it's only a possibility that you're going to die or it's only a possibility that you're going to go to a hospital, then we're not going to grant these motions. Well, to me, that just doesn't make sense. There has to be some degree of that possibility. And if it's likely that someone is going to suffer irreparable harm or death as a result of succumbing to the virus, and if it's also likely that that person is going to be infected with the virus, it seems like that's an extraordinary and compelling circumstance as many courts have found. And you made those arguments in the district court. Yes. The district court disagreed with you. That's correct. And the district court did disagree, and the court found that, you know, like to the final point is where the court felt it didn't have the discretion. It comes with the analysis starting at the end of page 20 of the court's opinion that's page ID number 796 through the conclusion. Sure, the court says, even if it could recognize these factors, the reasons defendants cite are not extraordinary and compelling. Well, if that's all the court did was leave it off at that, I would agree that the court probably, you know, would at least have said that it was considering it. But then you follow up. I see my time is done. You follow up with the rest of the opinion. The factors under the guidelines, each one of the points the court makes goes back to the guidelines. And with that, we would ask the court reverse the district court's decision, send it back for a further proceeding so that the court can take into consideration these factors and can use its discretion. Okay, well, thank you, Mr. Robinson and Ms. Brenneman for your arguments. Thank you. The court will take this matter under advisement.